

Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | William J. Hibbler | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 02 C 6700 | DATE | 8/20/2004 |
| CASE TITLE | Illinois Bell Telephone Company v. Wright, et al. | | |

MOTION: [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Illinois Bell's Motion for Summary Judgment ("Opening Brief on the Merits") (doc. # 23)

DOCKET ENTRY:

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing [held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference [held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial [set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs [by/agreement/pursuant to]
☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]. The July 10, 2002 ICC Order, mandating certain modifications to SBC's tariff, is inconsistent with Sections 251 and 252 of the Telecommunications Act and is thus PREEMPTED.

(11) ☐ [For further detail see order on the reverse side of the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | AUG 2 3 2004 date docketed | |
| ✓ | Docketing to mail notices. | | | 46 |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT CLERK | | |
| JHC | courtroom deputy's initials | 2004 AUG 20 PM 6:19 | date mailed notice | |
| | | Date/time received in Central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ILLINOIS BELL TELEPHONE COMPANY, )
INCORPORATED, d/b/a/ AMERITECH )
ILLINOIS, )
)
      Plaintiff, )
) No. 02 C 6700
v. )
) Judge William J. Hibbler
KEVIN WRIGHT, ERIN O'CONNELL-DIAZ, )
LULA M. FORD, EDWARD C. HURLEY )
AND MARY FRANCES SQUIRES in Their )
Capacity as Commissioners of the Illinois )
Commerce Commission and Not as Individuals, )
)
      Defendants, )
)
AT&T COMMUNICATIONS OF ILLINOIS, )
INC. )
)
      Intervenor/Defendant. )

DOCKETED
AUG 2 3 2004

## MEMORANDUM OPINION AND ORDER

On September 19, 2002, Illinois Bell Telephone Company, Incorporated, d/b/a Ameritech Illinois ("SBC")[1] filed a complaint against the Commissioners of the Illinois Commerce Commission ("ICC") in their capacity as commissioners. SBC filed its Complaint pursuant to Section 252(e)(6) of the Telecommunications Act of 1996, alleging that certain determinations made by the ICC in its Order of July 10, 2002, violated federal law. SBC asks the Court to: (1) declare that the ICC's determinations in its July 10, 2002, decision in ICC Docket No. 00-0700 ("ICC Order") violate federal law and reverse those determinations; and (2) enjoin the ICC from enforcing any provision

---

[1] At the time Plaintiff filed its Complaint, it did business as "Ameritech Illinois." It now does business as "SBC Illinois" or "SBC."

46

of the ICC Order that is inconsistent with the declaratory relief. On January 23, 2003, the Court granted AT&T Communications of Illinois' ("AT&T's") unopposed motion for leave to intervene in this case.

## I. BACKGROUND

At the heart of the Telecommunications Act of 1996 ("the Act") lies Congress' intent to deregulate the telecommunications industry. By mandating that incumbent, or existing, local exchange carriers ("ILECs "or incumbents) provide competing local exchange carriers ("CLECs" or new entrants) access to their vast telephone networks, Congress attempted to foster the growth of competition in the industry by leveling the playing field. ILECs were required to offer various elements of their networks on an "unbundled" basis ("UNEs" or unbundled network elements), and allow CLECs to connect equipment and facilities to their systems. CLECs have several options concerning the provision of services to their customers: (1) purchase all of the services they intend to offer from the ILEC at wholesale prices and then resell them to their own customers at retail; (2) create a network by furnishing certain network elements of their own and leasing the remainder from the ILEC; or (3) build a proprietary network and simply interconnect it with the ILEC's system to provide services to customers across both networks. In mandating such an array of options, the Act sought to "give aspiring competitors every possible incentive to enter local telephone markets." *Verizon Communications Inc. v. FCC*, 535 U.S. 467, 489 (2002). ILECs and CLECs are to negotiate interconnection agreements to establish the parameters of the relationship. If the carriers fail to arrive at agreements independently, the Act authorizes state commissions to mediate through arbitration. *See* 47 U.S.C. §§ 251-52.

The Act dictates that the rates for UNEs and interconnection should be "just, reasonable and

nondiscriminatory." 47 U.S.C. §251(c)(2)(D) (1996). As such, state communication commissions are required to set rates for interconnection and UNEs that are (1) "based on the cost (determined without reference to a rate-of-return or other rate-based proceeding) of providing the interconnection or network element;" (2) "nondiscriminatory;" and (3) "may include reasonable profit." 47 U.S.C. §252 (d)(1)(A-B) (1996). The Act also directs the Federal Communications Commission ("FCC") to promulgate regulations implementing the requirements of the statute. To assist the state commissions in arriving at appropriate rates, the FCC developed a "forward-looking economic cost pricing methodology." *In the Matter of Implementation of the Local Competition Provisions in the Telecommunications Act of 1996*, First Report and Order, CC Docket 96-98, 11 F.C.C. Rcd. 15,499, 29 (rel. Aug 8, 1996) ("*First Report and Order*").

This forward-looking economic cost pricing methodology mandates that incumbents should provide interconnection and UNEs at a price based on their "Total Element Long Run Incremental Cost ('TELRIC'), plus a reasonable share of forward looking joint and common costs." *First Report and Order* ¶ 29. A "reasonable allocation of forward-looking common costs" is defined in the regulations as those "economic costs efficiently incurred in providing a group of elements or services that cannot be attributed directly to individual elements or services." 47 C.F.R. §51.505(a-c) (1997). TELRIC pricing is based upon the cost of operating a hypothetical network built with the most efficient technology available. *AT & T Corp. v. Iowa Util. Bd.*, 525 U.S. 366, 375 (1999).

Certain costs may not be incorporated into the TELRIC, including historical or embedded costs, opportunity costs, and retail costs. 47 C.F.R. §51.505(d)(1-4) (1997). The FCC explains that the TELRIC pricing strategy "best replicates, to the extent possible, the conditions of a competitive market." *First Report and Order* ¶679. Although challenges have been made to the imposition of

the FCC's methodology, the Supreme Court recently held that TELRIC was consistent with the language of the Act, thereby authorizing its implementation. *Verizon*, 535 U.S. at 523.

## II. FACTUAL AND PROCEDURAL HISTORY

SBC is an ILEC. That is, it was an existing local exchange carrier when the Telecommunications Act was enacted. 47 U.S.C. § 251 (h). Pursuant to the Act, in June 1996, the ICC ordered SBC to provide the local loop, unbundled local switching ("ULS") and inter-office transport to requesting CLECs such as AT&T; and in February 1998, the ICC ordered SBC to provide CLECs the opportunity to use shared or common transport ("ST"). ICC Order at 1.

Also in 1998, SBC Communications, Inc., and Ameritech Corporation announced their intention to merge. As a condition of the ICC's approval of the merger, the ICC ordered SBC to file a tariff offering an interim shared transport solution, followed by a tariff offering a permanent shared transport solution. (ICC Br. at 3.) SBC filed its permanent shared transport tariff, Unbundled Local Switching with Shared Transport ("ULS-ST"), on August 24, 2000. As part of its proposed final transport solution, SBC also proposed a new ULS rate structure and ULS rates. The ICC began investigating this tariff on November 1, 2000, and in June 2001, the ICC held hearings where all parties were allowed to examine numerous expert witnesses. After further briefing, the ICC issued the final Order under review in this case. *Order, Investigation into Tariff Providing Unbundled Local Switching with Shared Transport*, No. 00-0700 (ICC, July 10, 2002).

In its Order, the ICC found that parts of SBC's tariff were inconsistent with 47 U.S.C. §§ 251-52 and FCC rules implementing those provisions, and the ICC ordered SBC to file a revised tariff in conformance with the ICC Order. On August 9, 2002, SBC filed an application for rehearing with the ICC, challenging many of the determinations in the ICC Order. The ICC denied

the application on August 20, 2002. On September 19, 2002, SBC filed this lawsuit for declaratory, injunctive, and other relief from certain determinations made in the Order.

In this lawsuit, SBC claims that a number of the determinations in the ICC Order violate federal law: (1) the determination of unbundled local switching and unbundled local switching with shared transport prices; (2) the determination of the unbundled local switching rate structure; (3) the determination that SBC is not entitled to measurement and billing costs; and (4) the determination of prices for custom routing over the advanced intelligence network ("AIN"). SBC asks that this Court declare the ICC determinations unlawful and reverse them accordingly; enjoin the ICC from enforcing the provisions in its Order inconsistent with the Court's decision; and award SBC such other and further relief as the Court deems just and proper.

## III. THE COURT'S JURISDICTION

SBC filed its complaint pursuant to Section 252(e)(6) of the Telecommunications Act, 47 U.S.C. § 252, and 28 U.S.C. § 1331. This Court has jurisdiction over this matter, and the ICC's protestations to the contrary are meritless. Section 1331 states that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." As this action arises under the Act of 1996, there is federal question jurisdiction in this case. Nothing in the Telecommunications Act strips federal courts of jurisdiction. *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635 (2002). "Decisions of state agencies implementing the 1996 Act are reviewable in federal district courts." *Ill. Bell Tel. Co. v. WorldCom Tech., Inc.*, 157 F.3d 500, 501 (7th Cir. 1998). In fact, the Act gives federal courts exclusive jurisdiction to review FCC or state commission actions relating to interconnection agreements. *MCI Telecomm. Corp. v. Ill. Bell Tel. Co.*, 222 F.3d 323, 329 (7th Cir. 2000). Federal courts review a state commission's

action for "compliance with the requirements of § 251 and § 252 of the Telecommunications Act. . . ." *Ill. Bell Tel. Co. v. Worldcom Tech., Inc.*, 179 F.3d 566, 570-71 (7th Cir. 1999).

## IV. STANDARD OF REVIEW

The standard of review in this case is multi-tiered because SBC seeks summary judgment in a review of a decision by a state commission. *Verizon North, Inc., v. Strand*, 367 F.3d 577, 581 (6th Cir. 2004). The first level of analysis is the traditional summary judgment analysis. Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56 (c). The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The opposing party must then "go beyond the pleadings" and "designate specific facts showing that there is a genuine [material] issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). During its summary judgment analysis, the court must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560 (7th Cir. 1996).

In the second level of analysis, the Court must determine whether SBC challenges the ICC's factual or legal findings. In this case, SBC challenges both findings of fact and conclusions of law in the ICC Order. Federal district courts review state commissions' interpretations of the Act and FCC regulations *de novo*. *Verizon North*, 367 F.3d at 581; *Mich. Bell Tel. Co. v. Strand*, 305 F.3d 580, 586 (6th Cir. 2002). A "state agency's interpretation of federal statutes is not entitled to the deference afforded a federal agency's interpretation of its own statutes under *Chevron*." *Strand*, 305 F.3d at 586 (citing *Orthopaedic Hosp. v. Belshe*, 103 F.3d 1491, 1495 (9th Cir. 1997)). Accordingly, this Court reviews the ICC's interpretation of the Act and FCC regulations *de novo*.

A state commission's findings of fact, however, are reviewed under the arbitrary and capricious standard. *Ind. Bell. Tel. Co v. McCarty*, 362 F.3d 378, 385 (7th Cir. 2004); *Ill. Bell Tel. Co. v. Wright*, 245 F. Supp. 2d 900, 905 (N.D. Ill. 2003); *Mich. Bell Tel. Co. v. Chappelle*, 222 F. Supp. 2d 905, 909 (E.D. Mich. 2002). The arbitrary and capricious standard allows the agency wide discretionary powers. If there is a reasonable basis for the factual determination reached by the state commission, it will be presumed valid. *Strand*, 305 F.3d at 586; *MCI Telecomm. Corp. v. Mich. Bell Tel. Co.*, 79 F. Supp. 2d 768, 773 (E.D. Mich. 1999).[2]

## V.     PREEMPTION

On October 31, 2003, this Court ordered the parties to file supplemental briefs addressing the implications on the instant case of the recent Seventh Circuit case, *Wis. Bell v. Bie*, 340 F.3d 441 (7th Cir. 2003). In that case, the Seventh Circuit held that the Wisconsin Public Service Commission's order requiring the ILEC, Wisconsin Bell, to file tariffs setting forth the price and terms on which competitors would be entitled to interconnect with its local telephone network was preempted by the Telecommunications Act, which explicitly mandates a negotiation process between ILECs and CLECs. The Seventh Circuit held that:

> The tariff procedure short-circuits negotiations, making hash of the statutory requirement that forbids requests for arbitration until 135 days after the local phone company is asked to negotiate an interconnection agreement. . . . The negotiation procedure established by the federal act provides the local phone company with a degree of protection that it would lack if the state commission could, by requiring the company to file a tariff that the commission might invalidate as unreasonable, enable would-be entrants to bypass the federally ordained procedure.

---

[2]Contrary to SBC's contentions, the Administrative Procedure Act does not provide the standard of review for state commission actions. *See GTE South, Inc. v. Morrison*, 199 F.3d 733, 745 (4th Cir. 1999) (citing 5 U.S.C. § 701(b)(1), which defines agency as "an authority of the Government of the United States").

*Bie*, 340 F.3d at 445 (discussing sections 251 and 252). Thus, the Seventh Circuit found the state commission's order was preempted because the tariff procedure is inconsistent with Sections 251 and 252 of the Act. *See Verizon North*, 367 F.3d at 583.

In its supplemental brief, AT&T argues that *Bie* does not apply, because unlike in *Bie*, SBC was not forced to file charges as tariffs, but rather did so voluntarily. AT&T claims the tariff was voluntary because SBC sought the ICC's approval for the Ameritech-SBC merger, and SBC negotiated and accepted the conditions attached to that approval, which included filing a tariff setting forth unbundled switching and shared transport services on particular terms.[3] The Seventh Circuit, however, disagreed with this analysis in an analogous case. In *Ind. Bell Tel. Co., Inc. v. Ind. Utility Regulatory Comm'n*, the Seventh Circuit held that even though SBC voluntarily issued its own performance assurance plan, or tariff, in order to obtain the state commission's approval of its application to provide long distance service, the state commission had no authority to impose its own plan upon SBC:

> [W]e note that at first glance it may seem disingenuous for SBC to submit its own performance assurance plan and, when that plan fails to gain approval, to say the IURC has no authority to issue its own plan, a plan to which SBC did not agree. A closer look, however, reveals the logic in SBC's position. The company was seeking approval of its application to provide long-distance service. A performance assurance plan of its own making would be its promise to meet its obligations as to local service if its application to provide long-distance service were granted. If its plan were inadequate, SBC would presumably bear the consequences in the form of the rejection of its application. To have a plan imposed from the outside takes the

---

[3]AT&T also claims that the ICC's tariff condition was not preempted because an ILEC may establish terms for its services by filing with the state commission "a statement of terms and conditions that such company generally offers within that state," and the state commission has the authority to continue review of the terms and impose additional requirements under state law. AT&T Supp. Br. at 3 (citing 47 U.S.C. § 252 (f)). However, the submission or approval of such a statement does not relieve the ILEC of the duty to negotiate terms and conditions of an agreement under § 251. 47 U.S.C. § 252 (f)(5).

8

> application process out of SBC's hands and imposes on it unnegotiated obligations in its provision of local service.

359 F.3d 493, 496-97 (7th Cir. 2004). In that case, the Seventh Circuit held that the Indiana Utility Commission's conditioning of SBC's right to provide long distance service on certain procedures for entry into the local service market was preempted by Sections 251 and 252 of the Act. *Id.* at 497.

In another case in which a tariff was voluntarily filed by a local exchange carrier, the Sixth Circuit sought to determine whether a state commission order requiring the ILEC to pay certain costs based upon a tariff unilaterally filed by a CLEC is preempted by the Act. *Verizon North*, 367 F.3d at 583. The CLEC, in the absence of an interconnection agreement, filed a tariff contending that the ILEC was required to pay it certain reciprocal compensation. *Verizon North*, 367 F.3d at 579-80. Although the ILEC disagreed, the Michigan Public Service Commission exercised jurisdiction over the dispute and approved the tariff. *Id.* at 580. The Sixth Circuit affirmed the district court's decision that the state commission does not have jurisdiction to order an ILEC to pay termination costs under a state tariff in the absence of an interconnection agreement. *Id.* at 580-81. The Sixth Circuit held that the state commission's order on the unilateral tariff bypassed the federal statutory process for reaching an interconnection agreement. *Id.* at 584-85. The order "completely obviate[d] the need for negotiations by allowing the competitor to establish its own rate without any interaction between the incumbent and the competitor." *Id.* at 585. The court held that this was inconsistent with and preempted by the statutory framework of § 252. *Id.*

AT&T would contend that the Sixth Circuit case is not analogous to the instant case because AT&T and SBC had already entered into an interconnection agreement in 1997 addressing ULS and ULS-ST services and prices, and the agreement contemplated that SBC might be required to file

9

related tariffs in the future and that future ICC orders would be incorporated into the agreement. Thus, AT&T claims that the ICC Order merely set rates as contemplated by the parties.

However, AT&T itself points to language in the 1997 agreement stating that in the event of an ICC order purporting to apply provisions of the Act, "either party may by providing written notice to the other Party *require that the affected provisions be renegotiated in good faith* and this agreement be amended accordingly to reflect the pricing, terms and conditions" set forth in the ICC order. AT&T Supp. Br. at 7 (emphasis added). In this case, the ICC Order mandated certain pricing terms and rates that precluded such renegotiation. Furthermore, the tariff at issue here was not directly related to any prior interconnection agreement between SBC and AT&T, but to the merger between Ameritech and SBC. SBC was not required to file the tariff to implement terms under the agreement, but as a pre-condition for its merger, and neither AT&T nor the ICC dispute SBC's claim that the rates set in the ICC Order were not based on prices in prior interconnection agreements. As such, the tariff dictated terms for future negotiations and renegotiations between SBC and CLECs. Although "it may seem disingenuous for SBC to submit its own performance assurance plan and, when that plan fails to gain approval, to say the [ICC] has no authority to issue its own plan," the ICC only had the authority to reject SBC's application, not to impose its own plan. *Ind. Bell*, 359 F.3d at 496-97.

AT&T next argues that the preemption at issue in *Bie* does not apply to modification of an existing tariff, but only to requiring the filing of an initial tariff. As explained above, however, the ICC Order does not appear to be reviewing a modification of an existing tariff, but rather reviewing a new tariff ordered as a condition to the SBC-Ameritech merger. Regardless, the Seventh Circuit has applied *Bie* to modifications of existing tariffs. In *Indiana Bell*, the Seventh Circuit invalidated

the state commission's modification of a tariff filed by SBC as a precondition to providing long distance service. 359 F.3d at 496-97. The Seventh Circuit applied *Bie* in that case and held that the state commission's order was preempted. *Id.*

Finally, AT&T and the ICC claim that SBC waived any preemption argument by not raising it. The Court, however, has the authority to address the issue of preemption *sua sponte* as it affects the subject matter jurisdiction of the district court. *Waid v. Merrill Area Pub. Sch.*, 91 F.3d 857, 860 (7th Cir. 1996). *See also Hartranft v. Joliet Township Sch. Dist. 204*, No. 96 C 5931, 1998 WL 164876, at *4 (N.D. Ill. Apr. 3, 1998). In the instant case, the subject matter jurisdiction of this Court has been affected by the ICC Order, and the ICC may not do an end-run around the federal jurisdiction mandated by Sections 251 and 252 of the Telecommunications Act by ordering SBC to modify a tariff as opposed to negotiating interconnection rates with CLECs.

The ICC argues that this Court does not have subject matter jurisdiction under Section 252 because the ICC initiated an investigation of SBC's tariff pursuant to state law, rather than approving, rejecting, interpreting or enforcing an interconnection agreement pursuant to § 252. ICC Supp. Br. at 7; ICC Resp. Br. at 6. Therefore, the ICC claims, SBC's appeal of a state tariff should go to state court, not federal court. The ICC, however, is arguing for exactly the type of result that *Bie* was trying to avoid. In *Bie*, the Seventh Circuit held that the tariff requirement:

> places a thumb on the negotiating scales by requiring one of the parties to the negotiation, the local phone company, but not the other, the would-be entrant, to state its reservation price, so that bargaining begins from there. And it allows the other party to challenge the reservation price, and try to get it lowered, by challenging the tariff before the state regulatory commission, with further appeal possible to a state court--*even though Congress, in setting up the negotiation procedure, explicitly excluded the state courts from getting involved in it*. At the very least, the tariff requirement complicates the contractual route by authorizing a parallel proceeding.

11

*Bie*, 340 F.3d at 444 (emphasis added). Failing to address the preemption issues in this case would defy the congressional mandate requiring the District Court to exercise its original and exclusive jurisdiction in this matter.

## VI. CONCLUSION

Therefore, the Court finds that the July 10, 2002 ICC Order, mandating certain modifications to SBC's tariff, is inconsistent with Sections 251 and 252 of the Telecommunications Act and is thus PREEMPTED.

IT IS SO ORDERED.

Dated: 8/20/04

William J. Hibbler, District Judge